IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

UNITED STATES OF AMERICA,

v.                                  Criminal No. 3:04cr13-01

DWAYNE FERGUSON

### MEMORANDUM OPINION

This matter is before the Court on the defendant's MOTION FOR COMPASSIONATE RELEASE PURSUANT TO SECTION 603(b) OF THE FIRST STEP ACT (ECF No. 235). Having considered the motion, the United States' Response in Opposition to Defendant's Motion for Compassionate Release (ECF No. 246), the defendant's REPLY TO UNITED STATES [sic] RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION FOR COMPASSIONATE RELEASE PURSUANT TO § 603(b) OF THE FIRST STEP ACT (ECF No. 250), the Joint Status Report (ECF No. 253), and the record herein, the defendant's MOTION FOR COMPASSIONATE RELEASE PURSUANT TO SECTION 603(b) OF THE FIRST STEP ACT (ECF No. 235) will be denied.

### BACKGROUND

In 2004, the defendant was indicted on eight counts arising out of a drug trafficking operation. The jury found him guilty of five counts specifically:

- Count One (conspiracy to distribute one kilogram or more of heroin, 50 grams or more of cocaine base, and five kilograms or more of cocaine hydrochloride, in violation of 21 U.S.C. § 846);
- Count Three (possession with intent to distribute one kilogram or more of heroin, in violation of 21 U.S.C. § 841);
- Count Four (possession with intent to distribute 50 grams or more of cocaine base, in violation of 21 U.S.C. § 841);
- Count Six (maintaining a place for distribut6ion of controlled substances, in violation of 21 U.S.C. § 856);
- Count Seven (possession of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c))

The jury found that the defendant was responsible for conspiring to distribute 30 kilograms or more of heroin, 1.5 kilograms or more of cocaine base, and 150 kilograms of cocaine hydrochloride, and determined that he was a manager or supervisor of the conspiracy alleged in Count One.  The jury also found that he possessed with the intent to distribute three to ten kilograms of heroin and 50 to 150 grams of cocaine base, and that he possessed certain firearms in furtherance of a drug trafficking crime.  The defendant was sentenced to 765 months imprisonment in total and

his conviction and sentence was affirmed on appeal.[1] In 2016, the defendant filed a motion for reduction of sentence under 18 U.S.C. § 3582(c)(2) because of changes to the drug quantity tables in the Sentencing Guidelines. The United States did not oppose that request for reduction and the Court granted the defendant's motion reducing his sentence of confinement to 622 months.

On May 15, 2020, the defendant filed a motion for compassionate release with the Warden at FCI Beckley where he is confined. He has asserted that he was entitled to release because he has asthma and has high blood pressure and is therefore placed at an increased risk of serious illness from COVID-19. The Warden denied that request. On January 22, 2021, the defendant filed the pending motion asserting that he is entitled to relief because he "is 43 years old and suffers now, or has suffered in the past, from asthma, obesity, high blood pressure, and renal insufficiency." That, he says, renders him particularly susceptible to COVID-19.

The record established that the defendant's place of incarceration, FCI Beckley, is a medium security facility. The defendant's projected release date is April 26, 2048. FCI Beckley

---

[1] Since then, the defendant has filed several motions seeking various relief, either by motions for new trial, motions to vacate, or motions under 28 U.S.C. § 2255, and a motion for reduction of sentence.

3

has a total of 1,499 inmates and as of March 2, 2021, two inmates and five staff members at FCI Beckley showed positive for COVID-19. The record also shows that 219 inmates and 76 staff members had previously tested positive for COVID-19 and have recovered. No inmate or staff member has died from COVID-19.

FCI Beckley has implemented a number of safety measures and, according to the Joint Status Report (ECF No. 253), FCI Beckley has vaccinated (with both doses) 160 staff members and 114 inmates and is continuing to receive vaccines and administer them to inmates based on priority and need in accord with the CDC Guidelines.

According to the BOP records, Ferguson is, as he alleges, 43 years and is a medical Care Level 1 inmate. That is the lowest care level meaning that Ferguson is healthy and if there are any chronic conditions, they are simple ones. Although Ferguson was low on the priority list for receiving vaccines, he nonetheless received the first dose of a vaccine on March 3, 3021 and is scheduled to receive his second dose shortly.

## DISCUSSION

The applicable statute, 18 U.S.C. § 3582(c)(1)(A), provides, in pertinent part, that, upon appropriate motion, the Court "may reduce the term of imprisonment . . . if it finds that

4

'extraordinary and compelling reasons' warrant such a reduction." It is settled that the burden is on the defendant to prove that extraordinary and compelling reasons exist for compassionate release under § 3582(c)(1)(A)(i). United States v. White, 378 F. Supp.3 784, 785 (W.D. Mo. 2019).

The "mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release, especially considering the Bureau of Prison's statutory role, and extensive professional efforts to curtail the virus' spread. United States v. Raia, 954 F.3d 594, 597 (3rd Cir. 2020). In assessing whether the record shows the existence of extraordinary and compelling reasons for compassionate release, courts consider, inter alia, the guidance of the CDC, and non-binding policy statements of the United States Sentencing Guidelines. See United States v. Beck, 425 F. Supp. 3d 573, 581-82 (M.D.N.C. 2019). These policy statements are not binding but are informative and may be considered. United States v. McCoy, 981 F.3d 271, 276 (4th Cir. 2020). The cases teach that, to constitute extraordinary and compelling reasons for compassionate release, medical conditions must be serious. Also, it is generally true that "chronic conditions that can be managed in prison are not a sufficient basis

5

for compassionate release." United States v. Ayon-Nunez, No. 1:16-cr-130, 2020 WL 704785, at *2-3 (E.D. Cal. Feb. 12, 2020).

To establish existence of "extraordinary and compelling" reasons for compassionate release because of COVID-19, the defendant must show "both a particularized susceptibility to the disease and a particularized risk of contracting the disease at [his] prison facility." United States v. White, ____ F. Supp.3d ____, 2020 WL 1906845, at *1 (E.D. Va. April 23, 2020) (quoting United States v. Feiling, 453 F. Supp.3d 832, 840 (E.D. Va. 2020)).

1.  **Particularized Susceptibility**

The defendant has established that he has asthma, hypertension and that he is obese with a risk of diabetes. He argues that, taken together, these conditions satisfy the particularized susceptibility factor. However, the fact that a defendant has established a higher susceptibility to COVID-19 does not resolve the particularized susceptibility requirement. The medical records in this case show that Ferguson is relatively healthy.

Also, it appears that the conditions on which Ferguson bases his motion are "chronic conditions that can be managed in prison [and thus] are not a sufficient basis for compassionate release." United States v. Ayon-Nunez, No. 1:16-cr-130, 2020 WL 704785, at *2-3 (E.D. Cal. Feb. 12, 2020). In addition, Ferguson has not

6

established that his medical needs cannot be met while incarcerated and, indeed, the medical records filed herein outline that he receives regular medical care, adjustment of his medications, and testing related to the chronic health issues. Moreover, Ferguson has received his first dose of vaccine and soon will receive the second one. Thus, whatever risk he may face is significantly diminished.

In sum, Ferguson has not met the particularized susceptibility risk facet of the applicable test.

### 2. Particularized Facility Risk

Nor has Ferguson met the particularized facility risk component of the test. His motion cites press releases respecting the instances of COVID-19 among inmates and staff at BOP facilities nationwide, but provides no real evidentiary support of a particularized risk of contracting the disease at FCI Beckley, the defendant's facility of incarceration. Further, the record reflects that, at the time of the filing of the Government's papers, FCI Beckley had two active case of COVID-19 among inmates, five active cases of COVID-19 among staff, and 219 inmates and 76 staff members who had previously recovered from COVID-19. No staff members or inmates at FCI Beckley have died from COVID-19.

In addition, all inmates who have tested positive are being appropriately treated and isolated in accord with the appropriate

CDC guidelines that have been adopted by the Bureau of Prisons. And, the record shows that staff and inmates are receiving vaccinations.

On this record, the particularized facility risk has not been shown.

### 3. Assessment Under 18 U.S.C. § 3553(a)

But, even if Ferguson had met the particularized risk assessment and the particularized facility assessment (which he has not), it would be appropriate to deny compassionate release in perspective of the sentencing factors prescribed by 18 U.S.C. § 3553(a). Compassionate release, of course, is appropriate only where the defendant is not a danger to the safety of any other person or of the community. The defendant argues, in conclusory fashion, that he is not a danger to the community. That, he says, is largely because he has not been convicted of a crime of violence or "carried or used guns."

It is correct that Ferguson has not been convicted of a crime of violence but it is incorrect that he has not carried or used guns. Indeed, he was convicted of possessing a Ruger .45 caliber handgun, an SKS .223 assault rifle, an MP-10 .45 caliber firearm, and a silencer in furtherance of his drug trafficking.

Moreover, the defendant was the leader of an extensive drug conspiracy and distributed a vast amount of drugs. Drugs present

8

tremendous danger to society, often resulting in the debilitation of those who use them and sometimes even in death. Reports are legion of the violence associated with drug trafficking. In other words, the defendant was convicted of conduct that itself presents a danger to society. And it cannot be denied that the presence of extensive weaponry in the defendant's possession is evidence of his willingness to do violence in defense of his illegal trade.

The original sentence, as reduced, protects society, promotes respect for the law and serves as a deterrent to the defendant. It remains the same today when one takes into account the entire record. And that record, of course, includes the defendant's record of self-betterment while in prison. The Court has considered that record and finds that the defendant has put his time in prison to good use and notes that there is no record of infractions of the Bureau of Prisons' rules while incarcerated. And the Court commends the defendant for all of those activities. Nonetheless, the seriousness of the offense and the danger that it represents, the vast quantities of the drugs distributed, the leadership role in the conspiracy, and the possession of firearms in furtherance of the conspiracy militate against a finding that compassionate release is appropriate here. United States v. Reyes, No. 3:03cr195, 2021 WL 411437, at *2 (E.D. Va. Feb. 5, 2021); see

also Albury v. United States, No. 2:19-cr-68, 2020 WL 6779643, at *5 (E.D. Va. Oct. 23, 2020).

In a remarkable effort to expand the compassionate release statute, Ferguson makes several other arguments. First, he argues that the Court should apply United States v. O'Brien, 560 U.S. 218 (2010) and Alleyne v. United States, 570 U.S. 99 (2013) to vacate his conviction on Count Seven or to reduce his sentence on that count to five years because the Indictment failed to specify the use of a silencer as an element of the offense. He also contends that his Fifth and Sixth Amendment rights were violated because (1) the Government failed to specify the silencer in the Indictment and thereby did not give him adequate notice of the potential punishment; (2) the Court failed to instruct the jury that it had to find the existence of a silencer beyond a reasonable doubt; and (3) the Government failed to advise him at the arraignment of the enhanced penalty on Count Seven and that the Court sentenced him under an incorrect guideline on Count Seven.

The United States contends that none of these claims were raised with the Warden and therefore the defendant has not exhausted his remaining claims within the Bureau of Prisons. It seems relatively clear from the statute that, where a defendant files claims with the Warden of a prison, he is obligated to pursue the administrative process and that includes the filing of all his

10

claims at the same time. He did not do that and thus he is, according to the Government, barred from doing do so here because he has not exhausted his remaining claims with the Bureau of Prisons.

The statutory exhaustion requirement is a mandatory, non-jurisdictional claims-processing rule. <u>United States v. Williams</u>, 829 F. App'x 138, 140 7th Cir. 2020; <u>United States v. Franco</u>, 973 F.3d 465, 468 (5th Cir. 2020). The Courts have held and the United States has previously agreed that a defendant need not file for a compassionate release with the Bureau of Prisons before filing in court. That, however, does not change the fact that, if the defendant does file for compassionate release, he must do so in accord with applicable rules. He has not done that and so the defendant has failed to exhaust these new theories.

The failure to exhaust can be excused particularly where, as here, the arguments are legal and not factual. That precept, however, does not assist Ferguson here. The statute, 18 U.S.C. § 3582(c)(1)(A) does not authorize relief for alleged errors at trial and sentencing in the way that Ferguson presses them here. In essence, what Ferguson does here is attempt to file a second 28 U.S.C. § 2255 motion and he has not satisfied the requirements for doing that. The compassionate release statute allows the court to consider extraordinary and compelling reasons warranting

11

compassionate release, but it does not replace the established mechanism for challenging the validity of a sentence. Nor does it allow the defendant to make arguments that were, or could have been, raised in direct appeal or collateral review. See United States v. Mattice, No. 20-3668, 2020 WL 7587155, at *2 (6th Cir. Oct. 7, 2020); United States v. Sargent, No. 20-5508, 2020 WL 6589004, at *2 (6th Cir. Sept. 30, 2020).

It is settled that, if all judicial appeals have been properly exhausted through the criminal appeals process, the proper method for challenging a conviction or sentence is by filing a habeas corpus petition. Rice v. Rivera, 617 F.3d 802, 807 (4th Cir. 2010); United States v. Hartwell, 448 F.3d 707, 714-15 (4th Cir. 2006) ("Any challenges to a criminal judgment after the appellate process is complete therefore may generally be brought only pursuant to a specific authorization for collateral review, such as 28 U.S.C. § 2255"). That principle is not altered merely because a defendant has put all of those challenges in a pleading labeled as one for compassionate release for the label does not control. United States v. Fine, 982 F.3d 1117, 1119 (8th Cir. 2020); Melton v. United States, 359 F.3d 855, 857 (7th Cir. 2004) ("Call it a motion for a new trial, arrest of judgment, mandamus, prohibition, coram nobis, coram vobis, audita querela, certiorari, capias, habeas corpus, ejectment, quare impedit . . . or an

12

application for a Get-Out-of-Jail-Card; the name makes no difference. It is substance that controls.")

The defendant cannot proceed with a collateral attack on his sentence and thereby escape the time limitations and applicable rules for collateral attack on sentences. The defendant has already filed an unsuccessful motion under 28 U.S.C. § 2255 and has not sought the Fourth Circuit's authorization to file a second or successive motion and therefore the Court certainly has no jurisdiction over the claims that he now asserts in that capacity.

## CONCLUSION

For the foregoing reasons, the defendant's MOTION FOR COMPASSIONATE RELEASE PURSUANT TO SECTION 603(b) OF THE FIRST STEP ACT (ECF No. 235) will be denied.

It is so ORDERED.

/s/ REP
Robert E. Payne
Senior United States District Judge

Richmond, Virginia
Date: April 29, 2021